UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DENIRA LABAT, *et al.*                                   CIVIL ACTION

VERSUS                                                    NO. 20-447

SYDNEY M. RAYNER, *et al.*                        SECTION M (5)

### ORDER & REASONS

Before the Court is the motion of plaintiffs Denira Labat and Sean Espirit (together, "Plaintiffs") for partial summary judgment.[1]  Defendants Metropolitan Property and Casualty Insurance Company ("Metropolitan"), Sydney M. Rayner, and Michael Bell (collectively, "Defendants") respond in opposition.[2]  Plaintiffs reply in further support of their motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion for partial summary judgment.

**I.    BACKGROUND**

This case arises from a car accident involving an attempted left turn.  On October 27, 2018, Labat was driving her brother, Espirit, home from his grandmother's funeral repast in a 2006 Acura TL.[4]  She was proceeding south (toward downtown) on St. Bernard Avenue, a divided street with a median (or, in New Orleans parlance, the neutral ground).

Rayner, a resident of Georgia, was visiting New Orleans for the first time to attend a music festival.[5]  She was driving Bell's Ford F-150 truck on A.P. Tureaud Avenue, which dead-ends into

---

[1] R. Doc. 31 at 1.
[2] R. Doc. 32 at 1.
[3] R. Doc. 37 at 1.
[4] R. Doc. 31-6 at 2.
[5] R. Doc. 31-4 at 1.

St. Bernard from the east. At the posted stop sign, Rayner stopped at the intersection of A.P. Tureaud and St. Bernard, intending to take a left.[6] To do so, she had to cross the northbound (or, again, in New Orleans parlance, lake-bound) lane of St. Bernard, enter the crossing in the median, and then turn left onto St. Bernard into the southbound lane of travel. The crossing in the median is itself divided into two lanes: approaching the crossing from A.P. Tureaud, the left side consists of a curved lane that turns into the protected left southbound lane of St. Bernard; and the right side of the crossing is a one-way lane (heading west, or the opposite direction from Rayner's travel) designed to allow the eastbound traffic from the one-way street of North Prieur Street, across from A.P. Tureaud on the west side of St. Bernard, to cross over the median and to turn left into St. Bernard's northbound lane. On the date of the accident, this crossing lane was marked with a one-way sign pointing opposite Rayner's direction of travel, but it was not marked with a "Do Not Enter" sign. There was a "Do Not Enter" sign marking the entry to North Prieur at its intersection with St. Bernard.

After Rayner stopped at the stop sign at the A.P. Tureaud-St. Bernard intersection, she proceeded to cross the northbound lane of St. Bernard. Instead of entering the left turning lane in the crossing in the median, which was designed for motorists to ease into the left, southbound lane of St. Bernard, she entered the right lane in the crossing, that is, the one-way lane for drivers trying to cross from North Prieur from the opposite direction.[7] Put simply, Rayner chose the wrong crossing lane in the median. At this point, Rayner failed to stop in the crossing or to yield to approaching southbound traffic on St. Bernard. Instead, in "one continuous motion," having crossed the northbound lane of St. Bernard, she continued through the median, without stopping or yielding, turning left onto St. Bernard (into the southbound lane of traffic). Rayner did so,

---

[6] R. Doc. 31-7 at 12-13.
[7] *Id.* at 12-14.

thinking she had the right of way.[8] In accomplishing this maneuver, Rayner explains that she sped up to avoid a car traveling northbound on St. Bernard after a passenger warned her to watch out.[9] She thought the car coming from the left was the only danger and, until the collision, failed to notice Labat's car, which was coming from her right side in the southbound lane of St. Bernard on the other side of the median.[10]

Labat saw Rayner's truck cross St. Bernard's northbound lane and enter the crossing in the median, but Labat kept going because she had the right of way and "thought [Rayner] was going to stop but she didn't[.]"[11] As a consequence, as Rayner was attempting her left turn onto St. Bernard, the front of Rayner's truck struck the rear driver's side of Labat's passing car, causing it to spin completely around counterclockwise before coming to a stop.[12]

An occupant of each car called 911.[13] After waiting a few hours, no police had arrived at the scene.[14] Rayner was anxious to get to the music festival.[15] An onlooker, who had approached the parties after the accident to offer assistance,[16] then suggested that Rayner write a statement taking responsibility for the accident so she could leave the scene to go to the festival.[17] Rayner

---

[8] *Id.* at 6 (testifying about the accident at her deposition, Rayner explained: "So we pull up to the stop sign before the turn, and I, of course, looked both ways. *I thought I had the turn all the way across, like to go past the lane that was coming towards me and to turn. I think I had that all the way.* So I start going, and then Zach in the back said, look out for that car. I thought he was talking about the car that was coming from the left. So I sped up a little bit to try to get out of his way, and I did not see the car I hit until I hit it. I don't know where it came from. I don't know. And I hit it. That was the car Zach was talking about was the one that I hit. I thought he was talking about the one coming from the left. I hit the car.") (emphasis added).

[9] *Id.* at 14.

[10] *Id.*

[11] R. Docs. 31-6 at 3-4; 32-3 at 2.

[12] R. Doc. 31-7 at 6-7, 12-13.

[13] R. Doc. 31-3 at 3.

[14] R. Doc. 31-8 at 7.

[15] R. Doc. 31-7 at 8.

[16] *Id.* at 7. The onlooker did not leave his name or contact information for the police. R. Doc. 32 at 4. Both parties deny knowing the man. *See* R. Docs. 31-6 at 9-10; 31-7 at 7.

[17] R. Docs. 31-6 at 8-9; 31-7 at 3; *see* R. Doc. 31-7 at 21.

3

provided Labat with the statement and her contact and insurance information, then left.[18]  The statement reads in full:

> I, Sydney Rayner, was turning left across a median, was confused by the traffic signs, missed my lane to merge, and came across the median onto a one way street where Miss Denira Labat was traveling.  I hit her car, it was my fault.  She had 2 passengers, I had 4.  It was not my car that I was driving, it was my passenger rider's car.[19]

Labat waited another two-and-a-half hours for the police to arrive.[20]  In his report of the accident, the investigating officer noted that Rayner failed to yield, but he did not cite her because she was not present.[21]  The officer did not cite Labat for any traffic violation or find that she was distracted.[22]

On October 9, 2019, Plaintiffs filed suit against Rayner for negligence and Bell for negligent entrustment.[23]  Defendants raised multiple affirmative defenses including the alleged negligence of both Labat and the City of New Orleans.[24]

## II. PENDING MOTION

Plaintiffs argue that Rayner's conduct was the sole and proximate cause of the accident because she breached her statutory duty to obey traffic laws and offers no evidence that any other party was at fault.[25]  They contend it is undisputed that Rayner (1) entered a one-way street against the designated direction; and (2) made a left turn without first establishing that it was safe to do so.[26]  Plaintiffs argue that Rayner is "burdened with a presumption of liability" that she cannot

---

[18] R. Doc. 31-6 at 11.
[19] R. Doc. 31-7 at 21.
[20] R. Doc. 31-6 at 11.
[21] R. Doc. 31-8 at 16.
[22] *Id.* at 18.
[23] R. Doc. 31-4 at 1-3.
[24] R. Doc. 31-5 at 3, 9.
[25] R. Doc. 31-3 at 6-12.
[26] *Id.* at 6-8.

overcome.[27] They note that Rayner admitted to making an unsafe left turn and hitting Labat's car.[28] Further, Plaintiffs assert that there is no evidence that they bear any comparative fault because Labat had the right of way and therefore could "assume traffic laws would be obeyed and that other vehicles would not be traveling in the wrong direction."[29]

In opposition, Defendants argue that there exist genuine disputes of material fact that preclude summary judgment. Defendants contend that on the day of the accident the traffic signage at the intersection of A.P. Tureaud and St. Bernard was unclear in directing motorists how to complete a lawful left turn, so there is no proof that the median crossing Rayner entered was a one-way street or that she knew it was one way.[30] Defendants also argue that the City is at fault for removing a once standing "Do Not Enter" sign which would have prevented Rayner from entering the right-hand lane of the crossing in the first place.[31] Finally, Defendants claim that Labat is comparatively negligent because she had a duty to avoid any impending accident yet "[s]he simply made the decision to proceed without taking any action to avoid the collision because she had the right of way."[32] In light of these alleged disputes, Defendants contend that summary judgment is not appropriate.[33]

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*

---

[27] *Id.* at 8 (quoting *Rabon v. Smithkors*, 238 So. 3d 1013 (La. App. 2018)).
[28] *Id.* at 9.
[29] *Id.* at 9-11.
[30] R. Doc. 32 at 9-10.
[31] *Id.*
[32] *Id.* at 10-11.
[33] *Id.* at 12.

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet,

6

a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Analysis

Under Louisiana law, which applies in this diversity case, a driver cannot make a left turn unless it can be done with reasonable safety. La. R.S. 32:104. A Louisiana appellate court has recently explained:

> Drivers executing left turns have a heavy burden of care under the law. Before attempting a left turn, a motorist should ascertain whether it can be completed safely. Because a left turn is one of the most dangerous maneuvers for a driver to execute, there is a presumption of negligence on a left-turning motorist involved in a motor vehicle accident.

*Henry v. Reeves*, 296 So. 3d 1076, 1082 (La. App.) (citations omitted), *writ denied*, 301 So. 3d 1176 (La. 2020); *see also Plaisance v. Epherson*, 466 So. 2d 485, 487 (La. App. 1985) ("Under

our jurisprudence a motorist attempting to turn left must make certain the turn can be made without danger to normal … oncoming traffic and he must yield the right of way to such vehicles. He must refrain from making the left turn unless the way is clear, and if a collision occurs while he is attempting such a maneuver the burden is upon him to show that he was free from negligence."). Prior to entering an intersection, the less favored vehicle must check that its path is safe before proceeding and is always required to yield to a favored motorist. *Crump v. Ritter*, 583 So. 2d 47, 50 (La. App. 1991); *see Donsereaux v. Hilbrenner*, 1992 WL 125472, at *5 (E.D. La. May 20, 1992) ("Louisiana law imposes a very high degree of care on left turning motorists and requires them to take every reasonable precaution to insure that the turn can be made without endangering approaching vehicles.").

In granting summary judgment against a motorist making a left turn, the *Henry* court explained the burden of proof:

> The burden of proving freedom from negligence in executing the turn rests upon the person making the turn. If a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen. In addition, an on-coming motorist has a right to assume that a left-turning motorist will yield the right-of-way.

296 So. 3d at 1082 (quotation and citations omitted); *see Donsereaux*, 1992 WL 125472, at *5 ("[U]nder Louisiana law, to avoid an imposition of liability the burden shifts to the left-turning motorist to show that he was free from negligence. Often, Louisiana courts have characterized this shift in the burden of proof as having created a presumption that a left turning motorist is liable for any accident in which he is involved.").

Here, Labat's initial burden was simply to establish that she had the right of way and that Rayner turned left into her path when she was so close to the intersection as to constitute an immediate danger. *Henry*, 296 So. 3d at 1083. The *material* facts of this accident are not in

dispute. So, there is no dispute that Labat was the favored motorist or that Rayner was attempting a left turn. Because Rayner was executing a left turn onto St. Bernard Avenue, she is presumed negligent.[34] This is all the more true since she was attempting the left turn from what she knew or should have known was the less favored street (A.P. Tureaud) because it was marked with a stop sign and dead-ended into St. Bernard. Although Rayner stopped prior to attempting a left turn, she "is additionally required to make a careful evaluation of traffic conditions in the intersection, use ordinary care and refrain from driving therein in the face of obvious or possible danger." *Crump*, 583 So. 2d at 50. Rayner did not make a "careful evaluation" of the traffic conditions because she was unsure both how to make a lawful left turn and what car her passenger was warning her about. Rayner claims that she did not see any car when commencing her left turn until the point of collision.[35] Therefore, she did not "see what she should have seen." *Sanchez Fernandez v. Gen. Motors Corp.*, 491 So. 2d 633, 636-37 (La. 1986). That their vehicles collided shows that Labat's vehicle was close enough to the intersection to constitute an immediate hazard at the time Rayner turned. *Henry*, 296 So. 3d at 1083. The burden then shifted to Rayner to show that she was free from negligence.

Rather than take this tact, Rayner accepts some responsibility for the accident but argues in opposition that Labat was also at fault. A driver on a favored street can generally assume that a driver entering from a less-favored roadway will not enter the favored path. *Edmond v. Cherokee Ins. Co.*, 170 So. 3d 1029, 1037 (La. App. 2015). She may keep that assumption "until she sees or should see that the other motorist has not observed or is not going to observe traffic laws." *Crump*, 583 So. 2d at 40. However, "when the motorist on the favored street should reasonably realize that the motorist on the less-favored street will continue [her] approach across an

---

[34] R. Doc. 31-7 at 6.
[35] *Id.* at 10, 17.


intersection, [s]he is guilty of negligence should [s]he then fail to take every precaution to avoid a collision." *Banks v. LeVasseur*, 488 So. 2d 1275, 1276 (La. App. 1986); *see also Anderson v. May*, 812 So. 2d 81, 85 (La. App. 2002) (noting that favored drivers can still be found negligent if their "substandard conduct contributed to the cause of the accident").

Here, Labat testified that she was "traveling straight" and "ha[d] the right-of-way."[36] Labat saw Rayner crossing the intersection but Labat continued anyway because she thought Rayner would stop.[37] Labat also testified that her vehicle "was kind of ahead of [Rayner's]," when Labat's car was struck in the rear.[38] Rayner provides no evidence that Labat (as the motorist on the favored street and thus having the right of way) was negligent in any way in making the assumption, to which she was entitled, that Rayner would follow the rules of the road. Instead, Rayner merely offers conjecture that Labat could have slowed or taken evasive action to avoid the collision. The less-favored driver defendant in *Henry* offered similar conjecture, which the court rejected as insufficient to carry his burden on summary judgment. 296 So. 3d at 1078, 1083-84. The undisputed evidence shows that Labat was right to assume that Rayner would stop in the crossing in the median, as was her duty under the law, and it was too late for Labat to do anything to avoid the collision after Rayner ignored the rules of the road by continuing through the intersection into her path.

In an additional effort to deflect fault, Defendants argue that the one-way street in the crossing was not properly marked by the City. While Defendants did not implead the City as a third-party defendant, they did assert an affirmative defense that the negligence or strict liability of third parties contributed to the accident. "When a defendant urges the fault of a non-party, it is

---

[36] R. Doc. 32-3 at 3.
[37] R. Doc. 31-6 at 3.
[38] *Id*. at 3-4.

incumbent upon that defendant to provide a preponderance of evidence that fault actually exists on the part of the non-party." *Willis v. Noble Drilling (US), Inc.*, 105 So. 3d 828, 841-42 (La. App. 2012); *see Haney v. Francewar*, 588 So. 2d 1172, 1178 (La. App. 1991) (the burden rests on the defense to establish the fault of a non-party in a car accident case; "since the defendants have failed to make a record showing proof by a preponderance of the evidence of the fault of any non-parties, this court can only apportion fault between those shown to be at fault by the evidence in the record"). Here, attempting to show fault on the part of the City, Defendants point both to Rayner's own testimony in which she states that the intersection was confusing to her and to unauthenticated "Google Street View" images that purport to show there was a "Do Not Enter" sign marking the right-hand crossing lane at the intersection in 2007 and 2011.[39] Plaintiffs contend that the Google images are inadmissible and cannot prove fault on the part of the City.[40]

"Despite the City's duty to maintain its traffic signals, it is not responsible for every accident resulting from a malfunctioning traffic control device. To be liable in negligence, the City must have had actual or constructive notice that a danger existed." *Ponthier v. City of New Orleans*, 496 So. 2d 1050, 1051 (La. App. 1986) (emphasis omitted). In *Ponthier*, the court determined that plaintiffs failed to meet their burden of proof to hold the City liable for a missing stop sign because they made no showing of a "record of complaints prior to the collision or any prior occurrence to put the City on constructive notice of the missing sign." *Id*. Similarly, Defendants here have not presented any summary-judgment evidence of a record of complaints made to the City about a missing "Do Not Enter" sign at the intersection's crossing, or of prior

---

[39] R. Doc. 32 at 6-7.
[40] The Court need not and does not rule on the admissibility of the Google images given the grounds for its disposition of the motion.

11

accidents at the intersection, as would have placed the City on actual or constructive notice to support assigning any fault to the City for its alleged negligence.

Defendants fare no better on their theory of the City's strict liability for the accident. For a municipality to bear strict liability, courts place great emphasis on whether an obstructed (or missing) sign "trapped" the driver into thinking an intersection was uncontrolled. *See*, *e.g.*, *Ponthier*, 496 So. 2d at 1052; *Pepitone v. State Farm Mut. Auto. Ins. Co.*, 369 So. 2d 267 (La. App. 1979). In *Ponthier*, the court exonerated the City after concluding that the obstructed sign was not the legal cause of the collision, but rather it was the inattentiveness of the driver entering the favored road. 496 So. 2d at 1053. The intersection in that case involved two streets of "apparent equal dignity." *Id.* Here, Rayner was not "trapped" into thinking the St. Bernard-A.P. Tureaud intersection was uncontrolled or that the streets were of equal dignity. St. Bernard was unquestionably the favored thoroughfare. That Rayner stopped at the stop sign marking the intersection, prior to beginning her left turn onto St. Bernard, demonstrated she knew or should have known she did not have the right of way.[41] Defendants contend, though, that Rayner never would have been in the right-hand crossing lane had a "Do Not Enter" sign been present the day of the accident.[42]

Even assuming the sign was missing, its absence was not the legal cause of the accident for several reasons. *See Berthiaume v. Gros*, 165 So. 3d 1275, 1278 (La. App. 2015) (observing in a car accident case that "whether [a party's] conduct is also the legal cause of the plaintiff's damages is purely a legal question"). First, the left-hand turning lane was readily available to Rayner to make and complete safely the left turn onto St. Bernard she intended. Second, the one-way sign marking the crossing street was alone sufficient to warn her against entry into the right-

---

[41] R. Doc. 32-2 at 15.
[42] R. Doc. 32 at 5.

hand crossing lane.  Third, having entered the crossing, Rayner was obligated to yield the right of way to oncoming traffic in the southbound lane of St. Bernard, coming to a complete stop if necessary.[43]  Instead, she did not see what she should have seen, namely, Labat's car.  In the face of this, Rayner could not reasonably have been trapped or deluded into the belief that she had the right of way; instead, she breached her duty to determine (before proceeding through the crossing) that she could make the left turn safely into the southbound lane of St. Bernard.  *See Ponthier*, 496 So. 2d at 1052.  In short, the absence of a "Do Not Enter" sign (even if true) does not absolve Rayner from heeding other adequate traffic controls or failing to see what she should have seen, and her concededly negligent conduct in proceeding through the median into the left turn without first determining it was safe to do so was the sole legal cause of the collision.  *Id*. at 1053.

Having failed to come forward with summary-judgment evidence sufficient to rebut the presumption against Rayner as the less-favored and left-turning motorist, Defendants have failed to provide a basis upon which to deny Plaintiffs' motion for summary judgment.  As the sole proximate and legal cause of the accident, Rayner bears complete fault for it.  *Id.*

## IV.   CONCLUSION

Accordingly, for the forgoing reasons,

IT IS ORDERED that Plaintiffs' motion for partial summary judgment (R. Doc. 31) is GRANTED.

New Orleans, Louisiana, this 28th day of July, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[43] Section 154-482(c) of the City's traffic code provides: "When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."