UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DENIRA M. LABAT, *et al.* | CIVIL ACTION |
| VERSUS | NO. 20-447 |
| SYDNEY M. RAYNER, *et al.* | SECTION M (5) |

## ORDER & REASONS

Before the Court are three motions *in limine* filed by defendants Metropolitan Casualty Company, Sydney M. Rayner, and Michael Bell (collectively, "Defendants").[1] Plaintiff Denira Labat responds to each in opposition.[2] Defendants reply in further support of their motions.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

**I.  Defendants' Motion *In Limine* to Exclude Plaintiff From Calling Defense Expert Witnesses At Trial (R. Doc. 123)**

**A.  The Parties' Contentions**

In their motion, Defendants argue that permitting Labat to call Defendants' retained experts, specifically, Dr. Everette Robert, Ian Hegwood, and John W. Theriot, in plaintiff's case-in-chief "would abrogate the purpose of federal expert identification and disclosure

---

[1] R. Docs. 120; 123; 126.
[2] R. Docs. 131; 132; 133.  In each of Labat's oppositions, she argues that Defendants' motions *in limine* are "blatantly untimely per this Court's Scheduling Order," because the deadline by which to file all motions *in limine* expired on November 24, 2021, long before Defendants' motions were filed on March 10, 11, and 15, 2022. R. Docs. 131 at 2; 132 at 2; 133 at 2.  The motions are not untimely, however, because (1) the deadline for such motions referenced by Labat was for a December 6, 2021 trial setting, *see* R. Doc. 81, not the current October 24, 2022 trial date; (2) the motions *in limine* Defendants filed are of the kind contemplated by the Court's pretrial notice to be filed closer to trial, even after the pretrial conference in the run up to trial; and (3) in any event, the Court granted Defendants leave to file the motions.  R. Docs. 119; 122; 125.
[3] R. Docs. 145; 147; 149.

requirements."[4] Because this Court precluded Labat from calling her treating physicians as expert witnesses at trial due to her noncompliance with the Federal Rules of Civil Procedure,[5] Defendants argue that allowing Labat to call their retained experts – who Labat did not include in her own Rule 26 disclosures – would unjustly benefit her; therefore, she must be excluded from doing so.[6]

In opposition, Labat argues that "Defendants provide absolutely no rule, jurisprudence, or other support for the assertion that Plaintiff cannot call upon [a] defense expert's testimony" in plaintiff's case-in-chief.[7] "[T]he alleged prejudice to Defendants is non-existent," says Labat, because (1) calling upon Defendants' own witnesses will not result in any surprise; (2) their anticipated testimony is "certainly not a mystery" to Defendants; and (3) Labat previously indicated "that [she] may call any and all of the witnesses identified by the Defendants, and [she] can and will list the names of the defense witnesses at issue in the pretrial order to be finalized for trial on October 24, 2022."[8] Thus, argues Labat, there is no support for Defendants' requested relief.[9]

In reply, Defendants argue that as a result of this Court's August 26, 2021 order, the only expert witnesses Labat will be permitted to call at trial are the two experts she identified in her Rule 26 disclosures made in October 2020.[10] "By attempting to call Defendants' expert witnesses," Defendants say Labat "is attempting to circumvent [t]his Court's ruling on August 26, 2021 and backdoor expert testimony to which it is not permitted based upon non-compliance with Rule 26 disclosure requirements."[11] If Labat were permitted to call Defendants' expert witnesses

---

[4] R. Doc. 123-1 at 3.
[5] R. Doc. 77 at 8.
[6] R. Doc. 123-1 at 3.
[7] R. Doc. 132 at 3.
[8] *Id.* at 2-3.
[9] *Id.* at 3.
[10] R. Doc. 145 at 3.
[11] *Id.*

in her case-in-chief, Defendants argue that it would highly prejudice them, Labat "would receive a windfall of expert testimony," and the jury would be misled and confused.[12]

## B. Analysis

The Court agrees with Defendants that Labat would receive a windfall of expert testimony if permitted to call Defendants' experts in her case-in-chief. There is no *per se* rule precluding a plaintiff from calling a defendant's expert in their case-in-chief. *Kerns v. Pro-Foam of S. Ala., Inc.*, 572 F. Supp. 2d 1303, 1309 (S.D. Ala. 2007). But "one should not rely as a general and well-established rule that a party can call an opposing party's expert," *In re Taco Bell Wage & Hour Actions*, 2016 WL 815634, at *3 n.3 (E.D. Cal. Mar. 2, 2016), because "the decision to allow a party to call an opposing party's witness in support of its own case-in-chef is 'committed to the discretion of the trial court.'" *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 2021 WL 4338973, at *11 (C.D. Cal. Aug. 13, 2021) (quoting *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 823 (3d Cir. 1978)); *see also Peterson v. Willie*, 81 F.3d 1033, 1038 n.4 (11th Cir. 1996) ("This decision is committed to the sound discretion of the district court.").

"This Court has broad discretion to control 'the mode and order of examining witnesses and presenting evidence,'" and "is instructed to exercise this discretion in order to '(1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment.'" *Holt v. Randy & Bros. Trucking*, 2013 WL 139813, at *1 (E.D. La. Jan. 10, 2013) (quoting Fed. R. Evid. 611(a) and 403). Allowing Labat to introduce Defendants' experts will prejudice Defendants in at least two ways. First, it would allow Labat to "'piggyback on another party's trial preparation.'" *Id.* (quoting *Ferguson v. Michael Foods, Inc.,* 189 F.R.D. 408, 409 (D. Minn. 1999) (allowing plaintiff to call defendant's expert "would

---

[12] *Id.*

3

(1) perversely reward the plaintiff for not timely designating its own expert; (2) perversely penalize defendants for adhering to the magistrate's scheduling order; and (3) undermine a principal objective of Rule 26, namely, 'to prevent a party from piggybacking on another party's trial preparation'" (quoting *House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 247 (N.D. Iowa 1996)))). Second, it would confuse the jury. *Id.* (citing *Peterson,* 81 F.3d at 1037; *Rubel v. Eli Lilly & Co.,* 160 F.R.D. 458, 460 (S.D. N.Y. 1995) ("[P]ermitting one party to call an expert previously retained or consulted by the other side entails a risk of very substantial prejudice stemming from the fact of the prior retention, quite apart from the substance of the testimony.")). Labat's "catchall phrases" in her witness and exhibit lists referencing that she may call all defense experts[13] are insufficient to overcome such prejudice or to remedy her own failure to make expert disclosures. Therefore, Labat will not be permitted to present Defendants' experts in her case-in-chief.

**II. Defendants' Motion *In Limine* to Limit Plaintiff's Treating Physicians' Trial Testimony Regarding Future Treatment and to Exclude Plaintiff's Retained Experts' Trial Testimony (R. Doc. 120)**

   **A. The Parties' Contentions**

In their motion, Defendants argue that, based on the Court's previous order precluding Labat's treating physicians from presenting expert testimony: (1) Labat's treating physicians should be precluded from testifying about future medical treatment, recommendations, and expenses; and (2) as a result, Labat's retained experts, a life-care planner and an economist, must be excluded, as neither will have the necessary foundation to properly testify.[14] First, Defendants argue that because Labat's treating physicians cannot testify as expert witnesses or provide opinion

---

[13] R. Doc. 132 at 2-3.
[14] R. Doc. 120 at 1.

4

testimony, they cannot testify regarding future treatment.[15] Second, Defendants argue that because Labat's treating physicians cannot provide testimony regarding future treatment, Labat's retained life-care planner and economist "have zero foundation for any testimony of their own and, as such, should be barred from testifying at trial."[16] "If an expert opinion is so fundamentally unsupported that it can offer no assistance to the court, then the testimony should not be admitted at all," say Defendants.[17] Thus, Defendants argue that the Court must prevent Labat's treating physicians from testifying about future medicals and wholly exclude Labat's retained experts' testimony.[18]

In opposition, Labat argues that Defendants' "blanket exclusion of essentially any evidence or testimony regarding causation and future medical treatment" runs afoul of the "properly" disclosed medical records that contain some information regarding these issues, and "which are [thus] the [proper] subject of factual testimony."[19] In addition, Labat argues that "Defendants have failed to demonstrate that there is no basis of admissibility for the opinions contained in Plaintiff's retained experts' testimony," so "the admissibility of any retained expert should be an on-the-spot call to be made within this Court's discretion during trial."[20] Thus, says Labat, "[a]ny issues related to the enforcement of the August 26, 2021 order are more properly decided as they arise at trial, rather than through an outright, blanket exclusion of several categories of evidence."[21]

In reply, Defendants argue that "[t]he impact of [the Court's August 26, 2021 order] barring Plaintiff's treating physicians from testifying as expert witnesses or providing opinion testimony, results in a *legal preclusion* of Plaintiff's treating physicians to testify about future medical

---

[15] R. Doc. 120-1 at 3.
[16] *Id.* at 5.
[17] *Id.* at 6.
[18] *Id.* at 9.
[19] R. Doc. 131 at 3-4.
[20] *Id.* at 5-6.
[21] *Id.* at 6.

5

treatment."[22] Because "the testimony regarding future treatment ... cannot be proven without the necessary expert opinion foundation,"[23] there is "an entire absence of any foundation upon which to base [Labat's retained expert's] corresponding opinions pursuant to well-settled Louisiana and applicable Federal law," say Defendants.[24] Accordingly, they conclude, the Court must "bar Plaintiff from attempting to 'backdoor' at trial."[25]

### B. Analysis

#### 1. Labat's treating physicians' testimony on future medicals is inadmissible.

Labat's treating physicians may not testify as experts regarding future medical treatment,[26] *see Lockett v. Doyle Dickerson Terrazzo, Inc.*, 2021 WL 6066697, at *5 (E.D. La. Nov. 3, 2021) (excluding treating physician's testimony on future medical expenses where plaintiff did not provide either written expert reports or summary disclosures on the topic), but they may offer testimony confined to those facts or data they learned during their actual care and treatment of Labat. *See Salas v. Transwood Logistics, Inc.*, 2021 WL 4483511, at *5 (S.D. Tex. July 7, 2021) ("Plaintiff's treating physicians may not offer opinion testimony based on information, such as medical records from other physicians or medical expense data, acquired outside the course of Plaintiff's treatment."), *adopted*, 2021 WL 4480746 (S.D. Tex. Sept. 30, 2021); *Schlueter v. Ingram Barge Co.*, 2019 WL 5683371, at *4 (M.D. Tenn. Nov. 1, 2019) ("A treating physician is generally qualified to testify about a patient's diagnosis, treatment, and prognosis, including the future course of treatment, so long as the testimony is based on personal knowledge and the

---

[22] R. Doc. 149 at 3 (emphasis in original).
[23] *Id.*
[24] *Id.* at 4.
[25] *Id.* at 3.
[26] R. Doc. 77 at 8. In its August 26, 2021 order, this Court held Labat's treating physicians' disclosures were inadequate and, therefore, at trial, "the treating physicians may testify only as fact witnesses (including testimony about their treatment and diagnosis of a plaintiff), but they may not testify as experts (and, therefore, cannot offer opinion testimony)." *Id.*

doctor's history, treatment and examination of the patient."); *Allen v. Resto*, 2014 WL 12773785, at *1 (E.D. La. Apr. 17, 2014) ("Although a treating physician need not provide an expert report, he may not testify beyond facts made known to him during the course of the care and treatment of the plaintiff.").

Here, Labat's treating physicians cannot testify as to future medicals. This Court has previously found that Labat's "barebone disclosures" regarding her treating physicians failed to comply with the Rule 26(a)(2)(C) disclosure requirements, including her failure to identify relevant medical records that would support expert testimony.[27] Defendants argue that none of Labat's treating physicians addressed Labat's future treatment in her medical records, precluding any testimony on the subject.[28] Labat argues the opposite, stating that such information is "already contained to some degree" in Labat's "properly" disclosed medical records, yet cites nothing in support.[29] Absent any showing that information regarding future medicals exists in the records of Labat's treating physicians or that such records were properly disclosed to Defendants, the Court cannot permit testimony on the topic.

The testimony of Labat's treating physicians, therefore, is limited to the facts and circumstances of Labat's treatment and diagnosis; it cannot pertain to matters beyond their medical records, like future medicals. *See Rea v. Wis. Coach Lines, Inc.*, 2014 WL 4981803, at *5 (E.D. La. Oct. 3, 2014) (excluding testimony regarding the need for future medical care where such testimony was not included in the medical records and plaintiff did not file an expert report). "'The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expenses will be medically necessary.'"

---

[27] *Id.*
[28] R. Doc. 53-1 at 11, 19.
[29] R. Doc. 131 at 3.

*See Robin v. Weeks Marine, Inc.*, 2018 WL 10776315, at *1 (E.D. La. Nov. 19, 2018) (quoting *Boudreaux v. Ace Am. Ins. Co.*, 2013 WL 1288633, at *3 (E.D. La. Mar. 26, 2013)). Labat cannot meet this standard given the restrictions on her treating physicians' testimony.

**2. Labat's life-care planner and economist's expert testimony is inadmissible.**

Because the testimony of Labat's life-care planner and economist is based on her treating physicians' assessment of future medicals, it, too, must be excluded. A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the

reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

The district court also must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, i.e., whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).

"'Fundamentally unsupported' opinions 'offer no expert assistance to the trier of fact' and should be excluded." *Green v. Mercury Ins. Co.*, 2021 WL 1647715, at *4 (E.D. La. Apr. 27, 2021) (quoting *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005)) (alterations omitted); *see also Rea*, 2014 WL 4981803, at *6 ("[T]he Court must also not allow expert testimony that is so fundamentally unsupported that it cannot possibly help the factfinder.") (citing *Vitterbo v. Dow Chemical Co.* 826 F.2d 420, 422 (5th Cir. 1987)).

Here, the testimony of Labat's life-care planner, Kasey Crawford, is inadmissible. Crawford "is tasked with relying upon the future treatment recommendations of the patient's

9

treating physicians to, then, estimate the cost of that future care."[30] "[T]hrough [an] interview with Ms. Labat, records received and reviewed, the opinion of Ms. Labat's treating physicians, as well as research with vendors, care providers, pharmacies, and any other associated suppliers," Crawford formulated a future-medical-cost-summary report.[31] She based her recommendations for future medical care "on a review of medical records, information gathered during [Crawford's] interview [with Labat], as well as recommendations outlined by Dr. Jolly and Dr. Zavatsky,"[32] who suggested that "surgical intervention is more probable than not."[33] But, as discussed, no treating physician, including Dr. Zavatsky, can opine on future medicals.[34] Absent testimony or other proof that Labat's future medical expenses will be medically necessary,[35] Crawford's opinions are fundamentally unsupported. *See Lockett*, 2021 WL 6066697, at *3. Without the testimony of Labat's treating physicians, Crawford is left with her interview of Labat, medical records, and research. These sources, however, are "of such little weight that the jury should not be permitted to receive that opinion," *Viterbo*, 826 F.2d at 422, especially considering that Labat's medical records do not address future medicals.[36] Therefore, Crawford's report and related testimony must be excluded.

Similarly, the testimony of Labat's economist, Ralph A. Litolff, Jr., must be excluded. Litolff "is tasked with relying upon the estimated costs of the life care planner to, then, project out the total amount of those costs over the remainder of the patient's life expectancy discounted for present value."[37] His report, which concerns only the present value of future medical and

---

[30] R. Doc. 120-1 at 5-6.
[31] R. Doc. 120-3 at 10.
[32] *Id.* at 6.
[33] *Id.* at 9.
[34] *See supra* Section II(B)(1).
[35] *See Robin*, 2018 WL 10776315, at *1 (citing *Boudreaux*, 2013 WL 1288633, at *3).
[36] *See supra* Section II(B)(1).
[37] R. Doc. 120-1 at 6.

rehabilitation costs that Labat will purportedly incur,[38] specifically details that Litolff "relied upon the detailed future medical care projections detailed in the Crawford Report."[39] That Litolff's report exclusively relies on Crawford's report to estimate Labat's future medical costs strips it of any reliable basis. Because there is no admissible evidence upon which Litolff can base his report, Litolff's opinions are fundamentally unsupported, and his report and related testimony must be excluded. *See Green*, 2021 WL 1647715, at *4.

### III. Defendants' Motion *In Limine* to Exclude Plaintiff from Calling Fact Witnesses, Deputy John O'Connor and Tashea Jordan, at Trial (R. Doc. 126)

#### A. The Parties' Contentions

In their motion, Defendants argue that, because the issue of liability has been judicially determined,[40] fact witnesses John O'Connor, the officer that arrived on the scene after the accident, and Tashea Jordan, a back-seat passenger in Labat's vehicle, can provide "no relevant testimony as to the remaining issues of medical causation and damages."[41] "Both witnesses are fact witnesses only," say Defendants, "and cannot provide any evidence or testimony regarding any issue other than facts surrounding the subject accident, which is no longer relevant to the triable legal issues in the lawsuit."[42] But if the Court finds that O'Connor and Jordan's testimony may be relevant, Defendants argue that such testimony "will undoubtedly mislead and distract the jury, whose sole task at trial will be to determine the remaining two legal issues of medical causation and damages, if any."[43] Their testimony "is wholly unnecessary, irrelevant, confusing, misleading, and a plain waste of everyone's time," say Defendants, and, therefore, must be excluded.[44]

---

[38] R. Doc. 120-5 at 1.
[39] *Id.* at 2.
[40] The Court previously determined that "[a]s the sole proximate and legal cause of the accident, [defendant] Rayner bears complete fault for it." R. Doc. 41 at 13.
[41] R. Doc. 126 at 1.
[42] R. Doc. 126-1 at 3.
[43] *Id.* at 4.
[44] *Id.*

11

In opposition, Labat argues that O'Connor and Jordan will be "most fit to testify to facts of the accident necessary to understand the severity of Ms. Labat's injuries," which includes "force-of-impact testimony."[45]  So, concludes Labat, Defendants' motion must be denied.[46]

In reply, Defendants argue that, because "liability for the subject will not be one of the issues the jury is charged with deciding, [the jury] need not receive any evidence or testimony surrounding the subject accident from fact witnesses other than Plaintiff herself."[47]  Further, Defendants argue that force-of-impact testimony "is inherently rooted in expert opinion," and O'Connor and Jordan, as fact witnesses, may not offer any such evidence or testimony.[48]  Finally, Defendants contend that "Plaintiff's presentation of any evidence and testimony of Deputy O'Connor and Tashea Jordan is another improper attempt at backdooring expert testimony," and as such, must be excluded.[49]

**B. Analysis**

"'The essential prerequisite of admissibility is relevance.'" *Jones v. Cannizzaro*, 2021 WL 217282, at *1 (E.D. La. Jan. 21, 2021) (quoting *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981)).  "Evidence is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence ... and the fact is of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401).  "Implicit in that definition are two distinct requirements: (1) The evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *Hall*, 653 F.2d at 1005.  "Whether a fact is of consequence is a question governed by the substantive law applicable

---

[45] R. Doc. 133 at 2-3.
[46] *Id.* at 3.
[47] R. Doc. 147 at 3.
[48] *Id.*
[49] *Id.* at 4-5.

to the case." *Jones*, 2021 WL 217282, at *1 (citing *Hall*, 653 F.2d at 1005). "For a fact to be 'of consequence,' under the substantive law of the case, the 'proposition to be proved must be ... probative of a matter that is in issue.'" *Lewis v. La. State Univ.*, 2021 WL 4497487, at *3 (M.D. La. Sept. 30, 2021) (quoting *Hall*, 653 F.2d at 1005). "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Under Rule 403, "[a] trial court 'may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Okulaja*, 21 F.4th 338, 346 (5th Cir. 2021) (quoting Fed. R. Evid. 403). "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir.1993) (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.1979)) (emphasis omitted). The trial court is "'afforded wide discretion in assessing the relevance and prejudicial effect of evidence.'" *United States v. Alaniz*, 726 F.3d 586, 606 (5th Cir. 2013) (quoting *United States v. Seale*, 600 F.3d 473, 494 (5th Cir.2010)).

The issues that remain for trial are medical causation and damages.[50] And while the Court does not know exactly how O'Connor and Jordan will testify, their first-hand observations regarding the accident, its aftermath, and Labat's condition may be directly relevant to Labat's damages because "a lay witness may present 'lay testimony to complement and corroborate medical evidence.'" *Robert v. Maurice*, 2020 WL 4035523, at *7 (E.D. La. July 17, 2020) (quoting *Barocco v. Ennis Inc.*, 100 F. App'x 965, 968 (5th Cir. 2004)) (alterations omitted). In other words, O'Connor and Jordan's perceptions may tend to prove the severity of the injuries sustained and,

---

[50] R. Doc. 126 at 1.

13

ultimately, complement and corroborate any medical evidence. *See Rea v. Wis. Coach Lines, Inc.*, 2015 WL 1012936, at *3 (E.D. La. Mar. 5, 2015) ("Under Rule 701, Officer Seaton may testify to any facts or what he perceived when he arrived at the accident scene; however, any testimony based on his interpretation as to cause of the accident and reconstruction of the accident scene based upon others' accounts of the events is properly excluded.").[51]  Therefore, O'Connor and Jordan will be allowed to testify.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion *in limine* to exclude plaintiff from calling defense expert witnesses at trial (R. Doc. 123) is GRANTED.

IT IS FURTHER ORDERED that Defendants' motion *in limine* to limit plaintiff's treating physicians' trial testimony regarding future treatment and to exclude plaintiff's retained experts' trial testimony (R. Doc. 120) is GRANTED.

IT IS FURTHER ORDERED that Defendants' motion *in limine* to exclude plaintiff from calling fact witnesses, Deputy John O'Connor and Tashea Jordan, at trial (R. Doc. 126) is DENIED.

New Orleans, Louisiana, this 4th day of May, 2022.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[51] *See also Logan v. Westfield Ins. Co.*, 2020 WL 412202, at *4 (W.D. La. Jan. 24, 2020) ("[F]irst-hand observations of a police officer, which are based on the officer's investigation and experience, are also admissible. As a lay witness, Officer Fail may provide opinion testimony that is rationally based on his perception, helpful to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge.") (citations omitted).